The obstruction of justice enhancement was inappropriate and must be reversed on two separate grounds. First of all, the district court failed to make adequate findings, and second of all, the evidence presented is insufficient to support an adjustment for obstruction of justice on this statement to law enforcement. First of all, regarding the findings of the district court judge, it's clear that the district court judge had to make a finding that there was a material, willful, false statement, and that this false statement actually obstructed or impeded the investigation in this case. There was no such finding. At best, the finding was, I find that there are many false statements, and I can't disregard those statements. There's nothing, essentially, to distinguish this case from Youssef B. Jimenez. In that case, the district court judge found that, I do believe that she knowingly lied on the stand. Simple finding of a lie is not enough to make adequate findings to increase for obstruction of justice when dealing with false statements to either law enforcement or to a court. But I think this court should go and reach the bigger decision, and that is that there are insufficient evidence based on this record to enhance for obstruction of justice. When you have statements to law enforcement at the time of the arrest, there has to be an actual impediment to the investigation. Here, there is absolutely no impediment to the investigation. For example, all that happened is Ms. Thing gave her statements about what happened, their inconsistencies, and the government identifies them, about who she was visiting down in Mexico, how often she was crossing from Mexico, who she was employed with. All of these things were done in the simple routine investigation that custom agents normally do. Which wouldn't have happened if she told the truth from the very beginning. Well, no. They would have done this. I submit they would have. Why would they have checked about whether the fellow was in jail or whether he was in jail, who she was visiting, if she had said, yes, it's mine? Well, first of all, let's put it this way. There's a difference between you're perfectly allowed to make false statements when you're arrested to law enforcement. Under obstruction of justice, it's not intended to penalize someone who simply denies guilt. It has to in some way impede the investigation. In this case, all it took for the agents to do was to do a records check to find out that her ex-husband was in jail at the time and to call the jail to confirm that. Regardless of what Ms. Thing says at the time, they're going to do a records check to see how often this car is crossing the border. They're also going to check the DMV history of the car to see who it's registered to, who the registered owner is. These are things that are going to be done in the routine investigation. There's really nothing to distinguish this case and the investigation in this case from what was done in Solano Godinez. In Solano Godinez, the person lied about who he was. The agents ran the records on him, found out that, well, the person who said he is, is in jail. The individual lied again. Well, yeah, I was in jail for murder, but they let me out. Well, the investigators called the jail. And they said, this court actually commented that this type of lie actually helped out in the investigation because they were able to confirm that the person that the defendant was saying he is was in jail. So, in fact, the lies helped the investigation. They didn't impede the investigation. What this enhancement is made for is when the investigation in some way changed and there's a consequence to it. I believe in the Solano Godinez case references the First Circuit case, and it's, it cites that the prosecution resources were diverted and there was the prosecution proceeded differently. As examples, one of the cases that has enhanced for destruction from this court is when they went and interviewed a person and she denied knowing where this child was. Well, it took them two extra days to find the child, so the investigation was hampered in some way. Another time, an individual lied about his criminal history. As a result of that lie, he got a more favorable plea agreement. There's no effect to the lies to increase under this section, and here there simply was none of the cause and effect that was done. That's based on your own belief. I don't think there's anything on the record of what the police would have done anyway. I mean, you've told us what the police would do anyway, I suppose you, but is there anything in the record which shows that the police would have checked the prior husband's whereabouts? They would have checked the amount of times the car had gone into Mexico. They would have checked her story out if she had been frank and said the contraband was mine. I really believe that's turning the question on its head, because it's the case. The answer is there isn't. I don't see it, but I can tell you. No, no. You know the record probably better than we do. There's nothing in the record which tells us that the police would have done the same type of investigation had she been frank and honest. Correct? Correct. The problem is to enhance under the guidelines. It's got to be beyond that. So they bore the burden to show that these were things that would not have done. And I think anyway. No, I think it's beyond that. It's not whether they did more work, but whether the work that they did was impeded or obstructed. Exactly. So the fact that there's nothing in the record actually supports Ms. Thing, because it was the government's burden to show that the agents actually did something beyond the normal course in this case. The fact that there's nothing in the record actually helps that argument. I think anyone that prosecutes or tries a case in the Southern District of California knows that every time you get in routine discovery, how many times that goes through the DMV history. These are just the normal thing. I think it would be derelict of the duties for the agents not to check out how many times this car's been crossing the border or who actually owns this car. But again, it just, it lacks the effect, the effect of them discovering the lies to help the prosecution rather than hindered it. There's no different way this prosecution would have gone if she had said something different. I think we have your argument in hand. Do you want to save some time for Bob? Yes, I would. Okay. Great. Your Honor, James Thaler of the United States. I was prepared initially to address most of my remarks to the allegations of misconduct by my colleague, but in light of the opening remarks by the defense counsel, I will. I think those issues are adequately briefed and, and, uh. Thank you, Your Honor. Yeah. Let's, let's begin then if I may remind the court of the standard for review of obstruction of justice enhancement. And that is that the factual findings underpinning the enhancement, clear, clear review. Did the judge clearly err in making her findings? And that's not the case. I mean, contrary to what defense says, there was an act, a significant impediment. And I count no fewer than nine lies the defendant said both at primary and during her post-arrest interview, which led the government in effect on a wild goose chase. It was not a routine investigation. One, the agent searched the car and reviewed its crossing history. Yes, perhaps that is rather easily done, but it might not have been done as Judge Bia pointed out. No, seriously, I mean, they always do that. Correct. Okay. That's, that's just one, that's just one, one factor to consider. They also investigated the whereabouts of her ex-husband, Raymundo. That would never have been done had she not made all these statements post-arrest about here's my ex-husband and I've been going to visit him three to four times a week. But, but let me, and I'm somewhat new to this issue. Isn't there a difference between forcing the government to do more work because of lies and obstructing or impeding the investigation of the work that they did? The enhancement doesn't say there will be an upward adjustment if you make us spend more tax monies investigating the case. It says there'll be an upward enhancement or adjustment if it's impeded or obstructed the investigation. There's a difference, isn't there? Well, I, I think- You're talking about the more work that they did because of her lies. But isn't there a difference between doing more work and having the work obstructed or impeded? Well, I think they're actually connected because the standard is that the, under 3C1.1, the enhancement is appropriate where the defendant willfully makes false statements that relate, that cause significant impediment. She did make all of these false statements. Well, there's no question about that. And it requires to do significant more work. It forced us to do it. I mean, I mean, obviously the government has a duty to, we've got to have to investigate our cases. We want to know, is the defendant lying about all of these things? Okay. They have to locate and review two witnesses. Yeah. May I stop you right there for a second? What, where's the district court's finding that your investigation was materially impeded? I'd like to direct the court to the excerpts of record at page 396, where it says, and I'd like to point out too, that Judge Gonzalez acknowledged that sometimes false testimony or statements could result from confusion, mistake, or faulty memory. She does acknowledge that. But in this case, there were so many false statements and really specific statements that the defendant made that were outright lies, even to the point where, and I submit that this is a, an implication of the extent and significance of her lies, even to the point where her mother-in-law, i.e. Adele Urbina, the defendant's mother-in-law, is forced to come in and testify that she wasn't telling the truth. I think, and I find, there's the word find, if we're going to insist on an express finding, I find I can't disregard those statements. And so I agree with the government that the adjustment is appropriate. My, my question is, I, I, there is a finding that there are false statements. Where is the finding that there were the false statements obstructed or impeded the investigator? She didn't make a finding. She did not make an express finding, but it's a, it's, I think it's an implicit finding, clearly based on the state of the record. I mean, she didn't use the magic words, significant impediment. But based on the record, it's clear that, look, I mean, she made no fewer than nine lies that led the government on a wild goose chase, forcing us to interview and do the border history, find out where Ramundo was, find, get his conviction documents. This is not Solano. Solano was, they ran his rap sheet. That takes several minutes. They sent the fingerprints to the FBI, and they made a couple of phone calls. Lasted a couple hours. Here we're talking about a government investigation that spanned several weeks, not just an hour. They did more than just run the rap sheet. Let me stop you there, because it seems to me the hallmark of, particularly the investigation helped the conviction. The fact that she told lies was used by the prosecution in a significant measure to convince the jury beyond a reasonable doubt that she was guilty. So it, her lies actually assisted you in convicting her, it seems to me. I haven't thought of that, Your Honor. I think that's kind of like a slippery slope, because that would mean that any time that you bring lies, you're never going to get an, you know, an enhancement. I agree with that. But, but also, but it was such a significant part of the closing argument. I mean, it's a theme of the closing argument, the big lie. Here's lie number one. Here's lie number two. Here's lie number three. There are lies. This case is full of lies. I mean, it's hard to turn a page in the closing argument without seeing the word lie being used by, you know. Agreed. Agreed. So. But, Your Honor, I would, I would also point out. Why, why, why would you, why would you use that unless you thought it was going to be persuasive to the jury as to convict, as to convicting? Of course it was persuasive. Very persuasive. But I would like to remind, too, that the court that government counsel did begin by all of the facts and circumstances surrounding the arrest, which are important. Perhaps not the dominant part of the component of the closing, but nonetheless important, i.e., she's the driver and sole occupant of a car with over $50,000 worth of drugs in it. She's the claimed registered owner of that car. The drugs are in hard to reach places, which obviously means, hey, it takes a long time to put drugs in those places. Somebody put them there. Somebody knew. There's a rattle in the door. Remember the left rear door that was peculiar and that she should have found had, had she rather to check, and that the, the strong sense of air freshener from the back. Now, that began, and I think that is strong independent evidence of her guilt, separate and apart from the nine or so lies. But I, I agree. Well, I think the question, I mean, to be fair, we, we, we know that these are sort of typical cases, that people lie at the secondary, they lie at primary, you, you prosecute, you check it out. What, what makes this case different from the ordinary border crossing case that we see so often? I would submit that one of the reasons is because of the fact that she lied at primary, then she post-arrest, actually admitted a number of those lies, and then still proceeded to lie and lie again. So we, perhaps where we might only have, had she come clean, like Judge Bea mentioned earlier, we would not have had significant investigation as a result of that. But she then took it upon herself to lie, mislead us yet again, and say, no, no, I actually wasn't in Mexico for three hours. I was visiting my ex-husband in Raymundo. Well, I don't think, I don't think, yes, sorry. He's been in jail, and we had to go find that out. Do you really think the officers believed her? I mean, I, you know, I don't know. I mean, that's kind of. The inferences, they didn't. I mean, it seems to me. But you never know. You never know. You can't know unless you do the significant investigation. But when I see the obstruction case, I've just given you my, my reaction, that where you see this, very appropriate, is when the officers believe the person, they go off and do something different, and then they say, wait a minute. This is completely wrong. And they go back to the defendant. Here it strikes me, and you can correct me, that at least there's an inference that they didn't believe her. They said, okay, we're going to build our case, and we're going to prove that she lied. Well, I don't think we can take that. We don't have the luxury of that. I think we have to say, well, we have to disprove that. We have to take it upon ourselves. Well, I don't know Raymundo from a hole in the wall. I gotta find out who he is, where he is. We don't have any information on that. She says she's been going to see him three or four days a week over the past several weeks. We have, we, we, you know, maybe the agent believed her, maybe she didn't. But I think it behooves us to assume that it's correct, and we have to disprove it. And it took us weeks and weeks to do that. How about the fact that she worked at, oh, I'm sorry. Can I interrupt you? Sure. From your, I'm speaking now on, on your side of the case. It seems to me the standard is abuse of discretion. Judge Gonzalez is more experienced with border crossing cases than any of us is. And so we really have to, if we were going to reverse this, we'd have to say she was abusing of discretion. Isn't that correct? I, yeah, I believe you're right, your honor. In fact, she even acknowledges that, and that's perhaps why she was a, gave a little bit shorter shrift than, obviously in the, in the, given the amount of inquiry on the matter. Had she had the luxury of tons and tons of time, she might have made a lot more explicit findings. And so I agree with the government that the probation office adjustment is appropriate, and I rarely apply that adjustment. You know, I can represent to the court someone who practices in this district very often, that it's considered. Do you think that's a sufficient finding of obstruction? You, you don't, you don't see very, you don't see very many of those. It's very rare, and you know, I wouldn't say very rare, but it's, I, I've seen it given on, on, on a record no more complete than this. In other words, you're saying that if we remanded this case to allow Judge Gonzales to make a finding of impediment or obstruction, it would be automatic? Absolutely, your honor. And everyone, thank you for your honors. Thank you for your argument. First of all, your honors, I'd like to totally disagree with that last statement, that a finding is totally automatic if remanded for just simply factual findings. I think, I really think the reason why there is short shift, shift and not a ton of time devoted to this is because it wasn't really adequately preserved by the government. If the PSR was prepared, the probation officer interviewed the U.S. assistant attorney on the case and the case agent. They never said anything about how our investigation was impeded in any way. Probation department concluded there was no obstruction. The government never filed objections to that probation report. And it was only in a sentencing memorandum filed a few days before sentencing that they even brought up the obstruction of justice. I, I think one of the problems is, this is a unique situation of the government asking for obstruction just on statements to, to, to agents at the time of arrest, rather than a testifying defendant at trial. I, I think that if you allowed Ms., Judge Gonzales to determine this anew, that she may not make those findings. And because I don't think those findings are supported by the record, the. Yeah, may, may I just, there's one, one factual point. Judge Gonzales says, I agree with the government and the probation office that the adjustment, that the adjustment is appropriate. And. She, she switches there, and she means, she agrees with probation, I think, on roll.  Oh, okay, all right. As far as I could tell, probation didn't recommend the enhancement. And she goes back, it's somewhere in that page or the next page, and says, oh, that's right, probation did not recommend obstruction. Oh, yeah, I see, I see it now, okay, thank you. The government keeps saying there's significant investigation, this investigation lasted several weeks. The record doesn't support that. First of all, as to the, regarding the ex-husband in jail. Miss Thing provided the date of birth. That could have been done, that was discovered through a record shift. It's not said whether it's that day, which could have been done that day. Okay, but assuming, assuming what the government says is true, that it's a couple of weeks of investigation, don't you think that would be sufficient to support the, the enhancement? I don't think that's sufficient, but that, that statement isn't supported by the record at all. I think it'd be important to reread the case agent's testimony during trial, and it's around 195 through like 220 of the excerpt of record. And he really goes through to show, all he did was call DMV once or twice. He ran the text reports that day, the day of the arrest, to find out about the car. And he found out about the husband by simply running a record check with the name and date of birth given by Miss Thing, and with the address given by Miss Thing. He contacted the mother at the home. So this could have all been done in, in one day, in a matter of hours. The record does not say this is several weeks, or it took a substantial amount of time. Okay. And I assume my time is up. Thank you for your argument. The case is sure to be submitted, and we will proceed to the next case, case on the argument calendar, Herrera-Estrada versus Ashcroft.
judges: Noonan, Thomas, Bea